No. 21,118.

E. SHORE and KITTIE SHORE, *Appellants*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellee.*

#### SYLLABUS BY THE COURT.

SHIPPER OF STOCK—*Dangerous Position Voluntarily Taken—Injuries— Railway Company Not Liable.* One who was traveling on a shipper's pass, accompanying stock being transported to market, got off the caboose at a station where the train was stopping to unload other stock, and while waiting at the station was ordered or directed by the station agent and a brakeman to take a key and deliver it to the train crew at the cattle pens and to ride back on that part of the train. He voluntarily obeyed the order or direction, and while getting upon the side of a car to ride back, was caught between the side of the car and the cattle chute and received injuries from which he died. *Held*, that as he voluntarily placed himself in a position of obvious danger and was not engaged in looking after or caring for the stock in his charge, the railroad company is not liable in an action to recover for his death. (*A. T. & S. F. Rld. Co., v. Lindley*, 42 Kan. 714, 22 Pac. 703.)

Appeal from Sedgwick district court, division No. 1; THOMAS C. WILSON, judge. Opinion filed March 9, 1918. Affirmed.

*John W. Adams,* and *George W. Adams,* both of Wichita, for the appellants.

*William R. Smith, Owen J. Wood,* and *Alfred A. Scott,* all of Topeka, for the appellee.

The opinion of the court was delivered by

PORTER, J.: Alleging that the death of their son, John Shore, was caused by the defendant's negligence, plaintiffs sued to recover damages. The court sustained a demurrer to the evidence, and they appeal.

John Shore was in charge of a carload of cattle being shipped from Wichita. At the station of Norwich it was necessary for the defendant to unload two head of stock at the local cattle pens, which were about 1,100 feet from the railway station. Young Shore, who was 21 years of age, alighted from the caboose and stood at the station platform waiting for the train to resume its journey. When the train crew in charge of the

car to be unloaded arrived at the cattle pens the cattle chute was found to be locked, and it became necessary to obtain a key before the car could be unloaded. They signaled the station agent for the key, and the brakeman and the station agent requested plaintiffs' son to take the key down to the cattle chute and ride back to the station on that part of the train. He took the key and delivered it to the train crew. Shortly afterwards he was found lying by the track near the cattle chute, and died almost immediately from his injuries. There was no eyewitness to the accident, but the circumstances indicated that he climbed on the side of one of the cars to ride back to the station, and was caught between the side of the car and the end of the cattle chute and received the injuries which resulted in his death. It was contended that because he was acting under the orders of the station agent and brakeman, performing a service solely for the defendant's benefit, the defendant is liable; that it was negligent in maintaining its cattle chute so close to the tracks that a person attempting to climb upon the train or ride upon the side of the car would be knocked down and injured.

The defendant admits that the fair inferences to be drawn from the circumstances in evidence are that the deceased was caught and crushed between the cattle chute and the side of one of the cars, but insists there was no evidence tending to show any negligence on the part of the defendant. It is urged that the act of the station agent and brakeman in sending him down to the chute with the key and telling him to ride back on the train could not have been the cause of his death; that if he was on the side ladder of the car, he must have climbed on near the cattle chute, and, by the use of his ordinary faculties of observation, he could have perceived the danger of being injured. An authority relied upon by the defendant is *A. T. & S. F. Rld. Co., v. Lindley,* 42 Kan. 714, 22 Pac. 703, where a shipper of stock, at the request of the conductor, got on top of the train to help signal and was thrown off by a sudden movement of the train and injured. There, as in the present case, the train was in charge of the conductor, but it was said in the opinion that the order or direction of the conductor to go on top of the cars and help signal "was entirely without the routine of the conductor's duties;

and as it was voluntarily obeyed by Lindley, it could not fasten any liability on the railroad company." (p. 723.) If he acted as an employee or brakeman it was of his own volition. The defendant also relies upon the terms of the shipping contract pleaded in the answer, by which the deceased, received free transportation with the stock and by which he agreed to remain in a safe place in the caboose while the train was in motion, and that he would not get upon any freight car while switching was being done or about to be done at stations or at any other time or place.

In our opinion the act of the station agent and brakeman in requesting the deceased to take the key down to the cattle chute and directing him to ride back on the train was not the cause of his death. He was under no obligation to obey the order or direction of these employees, neither of whom had any charge of the train. Even if the conductor, in whose sole charge the train was, had given him the order, it would have been optional with him whether or not he obeyed the request. From his age and intelligence, as shown by the evidence, it is apparent that he must have known the danger of attempting to get on the side of a car passing the cattle chute, and there is nothing in the evidence to indicate that any of the employees of the defendant saw or knew that he was in a position of danger. It is not even claimed that the station agent or brakeman told him what position to take on the train or how to get on it, although it would not seem that if this had been done it would have added anything to the plaintiffs' cause of action.

He voluntarily placed himself in a position of obvious danger at a time when he was not engaged in the performance of any duties connected with the care of the stock in his charge, and, following the rule declared in the Lindley case, *supra*, the demurrer to the evidence was rightly sustained.

The judgment is affirmed.